UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
WOORI BANK,                                          :
                                                     :
                     **Plaintiff,**       :
                                                     :      **OPINION & ORDER**
           -against-                          :
                                                     :      **12 Civ. 4254 (HB)**
RBS SECURITIES, INC., f/k/a GREENWICH                :
CAPITAL MARKETS, INC.; RBS HOLDINGS                  :
USA INC. f/k/a GREENWICH CAPITAL                     :
HOLDINGS, INC.; RBS FINANCIAL                        :
PRODUCTS, INC. f/k/a GREENWICH                       :
CAPITAL FINANCIAL PRODUCTS, INC.;                    :
ACA ABS 2007-1 LLC; CAIRN MEZZ ABS                   :
CDO II INC.; NOVASTAR ABS CDO I, INC.;               :
TABS 2006-6, LLC; and WEBSTER CDO I                  :
(DELAWARE) CORP.,                                    :
                                                     :
                     **Defendants.**      :
---------------------------------------------------------------X

**Hon. HAROLD BAER, JR., District Judge:**

      Plaintiff Woori Bank ("Woori") alleges that the defendants fraudulently and negligently misrepresented the value of and risks associated with collateralized debt obligations ("CDO") that were in part comprised of residential mortgage backed securities ("RMBS").[1] The defendants are three financial institutions, RBS Securities, Inc., RBS Holdings USA Inc., and RBS Financial Products, Inc., as well as five CDO entities, ACA ABS 2007-1, Cairn Mezz ABS CDO II, Novastar ABS CDO I, TABS 2006-6, and Webster CDO I (collectively, "Defendants"). Before the Court are two motions by Defendants to dismiss the complaint. These motions and the accompanying briefs cover significant territory, including venue and the sufficiency of the allegations as to each individual defendant. Because I conclude that Woori fails to state a claim for fraud, negligent misrepresentation, or unjust enrichment as to any and all Defendants, I need not reach the bulk of Defendants' arguments, and the Defendants' motion to dismiss is granted.

---

[1] A CDO is an "asset-backed security" that typically "is created by setting up a 'special purpose entity,' which then acquires a portfolio of assets . . . . The special purpose entity will then pool these assets and sell securities called [CDOs], which entitle the owner to a share of the cash flow that the assets generate." *Gearren v. McGraw-Hill Cos.*, 690 F. Supp. 2d 254, 258 n.2 (S.D.N.Y. 2010), *aff'd*, 660 F.3d 605 (2d Cir. 2011).

## BACKGROUND

The claims in this case follow what has now unfortunately become a common story. The Royal Bank of Scotland ("RBS"), Woori alleges, faced significant exposure from its investments in securities caused by the subprime housing debacle. Faced with the decision of whether to cut its losses or attempt to carve out the toxic assets and hope for the best, RBS allegedly took the latter approach. *See, e.g.*, Amended Complaint ("Complaint" or "AC") ¶ 55. To accomplish this, Woori alleges that RBS packaged the lower-rated tranches of its RMBSs and CDOs into new CDOs that Woori was duped into purchasing. *Id.* ¶ 2. Woori ultimately invested $80 million in CDOs arranged, marketed, and sold by Defendants.[2] *Id.* ¶¶ 2–4. Following the purchase, credit rating agencies engaged in "wide-spread write-downs of CDOs" and other asset-backed securities, including the CDOs here. AC ¶¶ 82–83. Woori alleges Defendants knew, based on superior information about loan performance and underwriting standards, that the CDOs carried greater risk than the CDOs' ratings suggested. *Id.* ¶¶ 62–70, 84, 104, 110. Finally, Woori alleges Defendants concealed or failed to properly disclose their illegal participation in multi-bank efforts to manipulate and artificially suppress the London Interbank Offering Rate ("LIBOR"), the rate upon which the CDO investment returns were pegged. *Id.* ¶¶ 5, 88–103. The alleged factual bases that underlie Woori's claims are primarily third-party reports about RBS's and other financial institutions' involvement in the RMBS market, including reports from the U.K. Financial Services Authority, Clayton Holdings, the Financial Crisis Inquiry Commission, and the Senate Permanent Subcommittee on Investigations of the Senate Committee on Homeland Security and Governmental Affairs. *Id.* ¶¶ 54–55, 62–66, 69, 86.

While the underlying structure of the deals may be complex, the issues now before the Court are not. By virtue of coinciding with the turning tide in the housing market and RBS's role in structuring related securities, the deals in this case are, like most deals of that time, somewhat suspect. But not all such deals are inherently fraudulent or misleading simply because they involved subprime mortgages and the sale of what are now worthless investments that were once pitched as safe. This case is one example of a seemingly legitimate deal between financial institutions and their effort to hedge their risks. Here Woori has failed to meet its pleading burden with respect to the CDOs it purchased.

---

[2] The CDOs that Woori is alleged to have invested in are the five CDO entities named as defendants and a sixth CDO, Acacia CDO 10. AC ¶ 2.

## DISCUSSION

Defendants move to dismiss for improper venue and for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal" conduct. *Twombly*, 550 U.S. at 556. When resolving a Rule 12(b)(6) motion analyzing the sufficiency of a pleading, courts assume that all well-pleaded facts alleged in the complaint are true and draw all reasonable inferences in favor of the plaintiff. *Kassnner v. 2nd Ave. Delicatessen*, 496 F.3d 229, 237 (2d Cir. 2007).

### I.     Venue

Here I depart from the general rule, which would address venue first. I do so in order to expedite a disposition, save expense for the parties, and save time for the judiciary. *See Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 40 (1st Cir. 1991) ("Having willingly chosen the forum, and not having asked the court below to pass first on the issues of jurisdiction and venue, the plaintiffs cannot now be allowed to escape an adverse judgment by asserting rights belonging not to them but to their litigation adversaries."). Should Woori experience an epiphanic change in perspective and conclude that New York is no longer an appropriate forum, it can always move for the Court to reconsider this Opinion and Order.

### II.    Fraud

Under New York law, the elements of a fraud claim are "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006); *accord Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 478 F. App'x 679 (2d Cir. 2012) (citing *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009)). Rule 9 subjects claims of fraud to a heightened pleading standard that requires the plaintiff to "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). The plaintiff must "(1) detail the

statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 187 (2d Cir. 2004) (internal quotation marks omitted). The Complaint must therefore state with particularity the circumstances of the fraud under Rule 9(b) and contains sufficient facts, accepted as true, to state claims for relief for common-law fraud that are facially plausible under Rule 8(a)(2).

### A. Alleged Misstatements

A statement is material if it would justify a party in taking action on the basis of that statement. 60A N.Y. JUR. 2D FRAUD AND DECEIT §§ 116, 158 (2011). And a material misrepresentation is actionable if it (a) induces a party to act, and (b) the party was justified or reasonable in being induced. *Sec. Ashland Inc. v. Morgan Stanley & Co., Inc.*, 652 F.3d 333, 337–38 (2d Cir. 2011); *see also Investor Protection Corp. v. BDO Seidman, L.L.P.*, 95 N.Y.2d 702, 709 (2001). Whether a fraud plaintiff's reliance was "reasonable" depends on "the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 195 (2d Cir. 2003). Nonetheless, even sophisticated plaintiffs are not required as a matter of law to "conduct their own audit" or "subject [their counterparties] to detailed questioning" where they have bargained for representations of truthfulness. *DDJ Mgmt., LLC v. Rhone Group LLC*, 931 N.E.2d 87, 92–93 (N.Y. 2010). Moreover, because justifiable reliance "involve[s] many factors to consider and balance, no single one of which is dispositive," it is "often a question of fact for the jury rather than a question of law for the court." *STMicroelectronics, N.V. v. Credit Suisse Securities (USA) LLC*, 648 F.3d 68, 81 (2d Cir. 2011) (citation omitted).

Defendants argue that Woori's allegations that the CDOs were falsely touted as "safe", "conservative", and "liquid" investments are eviscerated by the very disclosures accompanying these offerings. By Defendants' characterization, these disclosures revealed that: (1) the ratings were opinions, were not guarantees of credit quality or a recommendation, and did not fully reflect the true risks of the investments; (2) the CDOs would have no or a limited trading market, could be illiquid for long periods of time, and were backed in part by RMBSs that included subprime or other non-conforming loans (in some cases to a substantial degree); and (3) that

Woori itself was capable of and made its own independent assessment of the CDOs. Defs.' Supp. 27–28 (citing and quoting exhibits). These disclosures, Defendants argue, put Woori on notice that it was not purchasing securities with negligible downside risk.

If Woori's claim was simply that the CDOs were riskier than they thought or were comprised in part of non-conforming and subprime mortgages, the Complaint would surely fail. *See Iconix Brand Group Inc. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 12-2735-CV, 2012 WL 6097440, at *2 (2d Cir. Dec. 10, 2012) (unpublished decision) ("It is undisputed that the purportedly secret 'put' option is unambiguously disclosed on the first page of the relevant offering memorandum and then explained in greater detail throughout that document."); *M & T Bank Corp. v. LaSalle Bank Nat. Ass'n*, 852 F. Supp. 2d 324, 339 (W.D.N.Y. 2012) ("Where a plaintiff is notified that the information it possesses is incomplete, or is subject to information contained elsewhere, the plaintiff may truly be said to have willingly assumed the business risk that the facts may not be as represented." (internal quotation marks omitted)). But this is too narrow a view of what the actual misrepresentations are that Defendants are accused of making. What the disclosures did not say, and what Woori believes justifies its misplaced reliance, is that RBS had reason to believe that the ratings assigned to the CDOs were likely inflated. *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 176 (S.D.N.Y. 2009) ("'[A]n opinion may still be actionable if the speaker does not genuinely and reasonably believe it or if it is without basis in fact.'" (quoting *In re IBM Corp. Sec. Litig.*, 163 F.3d 102, 109 (2d Cir. 1998)). Where the disclosures do not relate to the risk that brought about Woori's loss, they "cannot absolve the defendants of their duty to avoid making fraudulent misrepresentations regarding the character of the underlying assets." *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, No. 11 CIV. 6188 DLC, 2012 WL 5395646, at *17 (S.D.N.Y. Nov. 5, 2012). Woori alleges that the means available to it, despite the disclaimers, would not have allowed it to uncover, for example, RBS's practice of including non-conforming loans that were initially rejected by its due diligence firm and of using its due diligence firm's findings to negotiate lower purchase prices from loan originators—information that neither Woori nor the ratings agencies had. AC ¶¶ 62–68; *see Dodona I, LLC v. Goldman, Sachs & Co.*, 847 F. Supp. 2d 624, 646–47 (S.D.N.Y. 2012) ("The Complaint alleges that those statements were misleading because of what they did not say: that the Marketing Defendants' knew of the deteriorating credit quality of the referenced assets, believed that the Hudson CDOs had no realistic chance of being

5

profitable, and that the Hudson CDOs were part of Goldman's risk reduction strategy."). Questions such as this—whether Woori could have uncovered RBS's awareness of and strategy for concealing non-public deficiencies in its securitized assets or whether the scope of Woori's due diligence was reasonable—are ill-suited for resolution on a motion to dismiss. *See In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001) ("Even with the heightened pleading standard under Rule 9(b) . . . we do not require the pleading of detailed evidentiary matter in securities litigation.").

> B.     The Defendants' Knowledge and Intent

A party may be liable for fraud if it "made" a misrepresentation or "authorized" or "caused" a misrepresentation to be made. 60A N.Y. JUR. 2D FRAUD AND DECEIT § 124 (2011). The defendant must have had knowledge of the representation's falsity and intent to defraud. The second sentence of Rule 9(b) prescribes that such knowledge may be "alleged generally." *See also Wight v. BankAmerica Corp.*, 219 F.3d 79, 91–92 (2d Cir. 2000) ("We apply the more general standard to scienter for the simple reason that a plaintiff realistically cannot be expected to plead a defendant's actual state of mind. (internal quotation marks omitted)). Regarding the intent to defraud, the plaintiff must plead the "factual basis" giving rise to a strong inference of fraudulent intent. *Landesbank*, 478 F.App'x at 681; *see also Lerner v. Fleet Bank*, 459 F.3d 273, 290–91 (2d Cir. 2006) ("[W]e must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations."). This requires a showing that defendants had either "motive and opportunity to commit fraud," or allegations of "strong circumstantial evidence of conscious misbehavior or recklessness." *Landesbank*, 478 F.App'x at 681. A general profit motive, such as the motive to earn fees, when executed legally is not sufficient to show fraud. *See id.* (citing *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000)).

As discussed above, Woori has alleged that the various materials describing the CDOs were inaccurate and misleading.[3] Furthermore, Woori has alleged the defendants' knowledge of the falsity of its statements based on the reasonable inference taken from the defendants' internal

---

[3] I do have significant concerns about the specificity of Woori's allegations regarding which entities were responsible for which statements or omissions, *see Naughright v. Weiss*, 826 F. Supp. 2d 676, 689 (S.D.N.Y. 2011) ("When a claim is brought against multiple defendants, Rule 9(b) requires that a plaintiff differentiate his allegations as to each defendant and inform each defendant separately of the specific allegations."), but because I find that Woori has failed to plead a factual basis giving rise to a strong inference of fraudulent intent, I do not reach these issues.

due diligence procedures and other alleged facts that the defendants were aware of the impending collapse of the subprime mortgage market and changed their strategy in response. *See Cohen v. Koenig*, 25 F.3d 1168, 1174 (2d Cir. 1994) ("[S]ufficient facts were pleaded to suggest that plaintiffs may be able to prove that defendants more likely than not knew that their financial representations were false."); *see also Dandong v. Pinnacle Performance Ltd.*, No. 10 CIV. 8086 LBS, 2011 WL 5170293, at *13 (S.D.N.Y. Oct. 31, 2011). Defendants argue that the Clayton report, which was prepared by a due diligence consultant and issued after the offerings here, cannot support an inference of knowledge at the time of the offerings themselves. Though not alleged in its Complaint, Woori points to a document it relied on in preparing it that suggests the information contained in the Clayton report was based on monthly reports given to Clayton's clients during the time period in question. *See* Pl.'s Opp'n 6 n.2; *see also Fed. Hous. Fin. Agency*, 2012 WL 5395646, at *11 n.15 ("[FHFA] cites the report as evidence of information that Clayton communicated to the defendants on a rolling basis between the first quarter of 2006 and the second quarter of 2007.").

But there is at least one place that Woori's Complaint has failed to bring me, and that is to a strong inference of fraudulent intent. This case lacks the usual telltale signals that have allowed courts in similar situations to find that the particularity requirements of Rule 9(b) were satisfied. *See In re Scholastic Corp. Sec. Litig.*, 252 F.3d at 72 (describing the need for the who, what, where, when, and how under Rule 9); *Arazie v. Mullane*, 2 F.3d 1456, 1467 (7th Cir. 1993) (same). For example, there is no allegation that the defendants were simultaneously marketing these CDOs to Woori while at the same time going short on the very assets that comprised them. *Cf. Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 278 (S.D.N.Y. 2012); *Dandong*, 2011 WL 5170293, at *1, *11–13. There is nothing to tie the Clayton report and other alleged facts about the defendants' knowledge of inadequate mortgage underwriting to the specific offerings in this case. *Cf. Cohen*, 25 F.3d at 1174 ("[T]he amended complaint spelled out circumstances from which it could easily be inferred that the [defendants] had a motive to make false representations."); *Dodona I, LLC*, 847 F. Supp. 2d at 642 (quoting relevant and specific correspondence); *Bayerische Landesbank, New York Branch v. Barclays Capital, Inc.*, No. 12 CIV. 3294 LLS, 2012 WL 5383572, at *3 (S.D.N.Y. Nov. 5, 2012) ("[P]laintiff . . . alleges that [defendants] misrepresented to plaintiff the nature of their roles in the transaction at issue, an assertion not necessarily confined to documentary proof."); *Abu Dhabi Commercial Bank*, 651 F.

Supp. 2d at 178 (". . . Morgan Stanley possessed actual information that contradicted the high ratings that the Cheyne SIV had received."); *Fed. Hous. Fin. Agency*, 2012 WL 5395646, at *11–15("Like JPMorgan, Bear Stearns was involved not only in the securitization of mortgage loans but also in their origination . . . .").

    Without additional allegations such as these, I cannot infer that any of the defendants acted fraudulently in the sale and marketing of the CDOs here. *See Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 821 F. Supp. 2d 616, 622 (S.D.N.Y. 2011) ("While other allegations tend to support an inference that Goldman may have had knowledge of the toxic mortgages, they do not satisfy Rule 9(b)."), *aff'd*, 478 F. App'x 679 (2d Cir. 2012); *N.J. Carpenters Health Fund v. NovaStar Mortg., Inc.*, No. 08 Civ. 5310 (DAB), 2011 WL 1338195, at *11 (S.D.N.Y. Mar. 31, 2011) (dismissing misrepresentation claim where plaintiff "fail[ed] to make allegations specific to the . . . only offering that is relevant here"); *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 692 F. Supp. 2d 387, 394 (S.D.N.Y. 2010) (rejecting fraud claim where plaintiff failed to allege how loans described in report were connected to relevant securities). Indeed, by Woori's own characterization, it "alleges that RBS *systematically* abandoned its underwriting standards and improperly pressured the ratings agencies to provide knowingly false ratings." Pl.'s Opp'n 29 (emphasis added). This attempt to ascribe general conduct, supported by third-party reports, to the disclosures here is the very antithesis of specificity. Put another way, Woori has not established—either by allegations of motive or circumstances—a factual connection between Defendants' knowledge of problems in the RMBS market (or even RBS's suspect activities) and the transactions in this case.

**III.**    **Negligent Misrepresentation**

    "It is well settled that a claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information". *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011) (internal quotation marks omitted). Stated another way, the plaintiff must show (1) an awareness by the declarant that the statement would be used for a particular purpose, (2) reliance by the recipient of the statement, and (3) some conduct by the declarant linking the statement to the recipient and evincing an understanding of that reliance. *164 Mulberry St. Corp. v. Columbia Univ.*, 771 N.Y.S.2d 16, 24 (1st Dep't 2004).

      *A.*      *Rule 9(b) and Negligent Misrepresentation Claims*

      The Second Circuit has said that Rule 9(b) "may or may not" apply to a negligent misrepresentation claim, *see Eternity Global Master Fund*, 375 F.3d at 188, and that the language of Rule 9(b) "is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004). District courts in this Circuit have concluded that the Rule is applicable to negligent misrepresentation claims that are premised on fraudulent conduct. *See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 200 (S.D.N.Y. 2011). But it is not correct to say that because negligent misrepresentation *may* sound in fraud that a negligent misrepresentation claim is *ipso facto* subject to Rule 9(b)'s heightened pleading standard: fraud is not a necessary element of a negligent misrepresentation claim. *See City of Roseville Employees' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 424 (S.D.N.Y. 2011) ("Motions to dismiss Securities Act claims relying on misrepresentations are analyzed under Rule 9(b) to the extent that they rely on allegations of fraud, but under Rule 8 otherwise."); *see also In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 272 (3d Cir. 2006) ("[C]laims do not sound in fraud if ordinary negligence is expressly pled in connection with those claims."). If ordinary negligence is alleged and those claims pled separately from the fraud claims, there is no compelling reason to trigger Rule 9(b). *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d at 273.

      Woori has styled its claims as alternate theories of fraud and negligence, but Woori has failed to distinguish between the two. *Contra City of Roseville Employees' Ret. Sys.*, 814 F. Supp. 2d at 425 ("[T]he substance of the allegations keeps the distinction as clear as does the complaint's structure." (internal quotation marks omitted)). Woori incorporates each allegation of the Complaint in its claim for negligent misrepresentation. Compl. ¶ 169. The entire thrust of the Complaint is that the Defendants knowingly carved out and pooled vulnerable tranches from RMBSs and CDOs, secured false or manipulated credit ratings, and offloaded the newly packaged CDOs on naïve investors like Woori. *See, e.g.*, Compl. ¶¶ 42, 44, 45, 56, 59, 62, 64, 66, 70, 79, 84, 88, 104, 105 at p. 46; *see also In re Parmalat Secs. Litig.*, 479 F. Supp. 2d 332, 339 n.30 (S.D.N.Y. 2007) ("The Bank's claim for negligent misrepresentation 'realleges and incorporates by reference' all prior allegations, including those alleging fraud," and is therefore "subject to Rule 9(b)."). Woori's negligent misrepresentation claim therefore "sounds in fraud".

9

### B.     Justifiable Reliance

"[T]he law of negligent misrepresentation requires a closer degree of trust between the parties than that of the ordinary buyer and seller in order to find reliance on such statements justified." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003). In determining whether a complaint adequately pleads justifiable reliance, courts "consider whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (1996). "[A] sparsely pled special relationship of trust or confidence is not fatal to a claim for negligent misrepresentation where the complaint emphatically alleges the other two factors enunciated in *Kimmell*." *Eternity Global Master Fund*, 375 F.3d at 188 (internal quotation marks omitted).

Here, there is no actual privity of contract that demands Defendants protect Woori from purely economic losses. The numerous disclaimers that cautioned Woori to assess for itself the stability of the underlying collateral and not to rely on representations made by RBS or the ratings emphasizes that this was a standard arm's-length transaction. *See UST Private Equity Investors Fund, Inc. v. Salomon Smith Barney*, 288 A.D.2d 87, 88 (1st Dep't 2001) ("[A]s a matter of law, a sophisticated plaintiff cannot establish that it entered into an arm's length transaction in justifiable reliance on alleged misrepresentations if that plaintiff failed to make use of the means of verification that were available to it, such as reviewing the files of the other parties."). And like in *Landesbank*, Woori represented that it had undertaken an independent inquiry of the collateral. *See Landesbank*, 821 F. Supp. 2d at 624.

I am not persuaded that RBS, by virtue of greater experience in the RMBS business, possessed some kind of expertise significantly greater than Woori and was somehow obligated to share it. *See* AC ¶¶ 41–42. The expertise at issue here is in financial transactions and risk assessment, it matters little that this was a new area of investment for Woori. *See Dallas Aerospace*, 352 F.3d at 789 ("[A plaintiff] cannot claim it relied on [defendant's] special expertise [where] it is clear that [plaintiff] itself had the relevant expertise at issue."). Woori has the relevant expertise; whether or not it put it to good use is a different matter entirely. *See Terra Secs. ASA Konkursbo v. Citigroup, Inc.*, 450 F. App'x 32, 34 (2d Cir. 2011) ("[Plaintiffs] have not alleged that they conducted any independent investigation prior to making their investments.

Indeed, no effort seems to have been made to verify any of defendants' alleged misrepresentations."); *Sebastian Holding, Inc. v. Deutsche Bank AG*, 78 A.D.3d 446, 447 (1st Dep't 2010) ("Plaintiff's alleged reliance on defendant's superior knowledge and expertise in connection with its foreign exchange trading account ignores the reality that the parties engaged in arm's-length transactions pursuant to contracts between sophisticated business entities . . . .").

Instead, the question is whether there is some other basis on which to find RBS negligent, such as "a relationship so close as to approach that of privity." *Parrott v. Coopers & Lybrand, L.L.P.*, 95 N.Y.2d 479, 483 (2000); *see also J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007). And simply because both Woori and RBS are sophisticated parties, that does not preclude RBS from still occupying a unique position with respect to these transactions. For example, the relationship between the parties could extend beyond the typical arm's-length business transaction where "defendants initiated contact with plaintiffs, induced them to forebear from performing their own due diligence, and repeatedly vouched for the veracity of the allegedly deceptive information." *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001), *cited in Eternity Global*, 375 F.3d at 188–89. A duty to disclose material facts can arise "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge". *Ellington Credit Fund*, 837 F. Supp. 2d at 201 (citing *Lerner*, 459 F.3d at 292; *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). It is important to keep in mind that there is no requirement that there be information parity between counterparties in commercial transactions such as this. *See Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1192 n.27 (C.D. Cal. 2011) (applying New York law and noting the "informational asymmetries inherent in any commercial transaction"). Instead, there is a duty to disclose information only if the transaction would be "'inherently unfair'" without disclosure. *Jana L. v. W. 129th St. Realty Corp.*, 22 A.D.3d 274, 277 (1st Dep't 2005) (quoting *Chiarella v. United States*, 445 U.S. 222, 232 (1980)); *see also Warner Theatre Assocs. Ltd. P'ship v. Metro Life Ins. Co.*, 149 F.3d 134, 136 (2d Cir. 1998) ("[I]f the allegedly misrepresented facts are peculiarly within the misrepresenting party's knowledge, even a specific disclaimer will not undermine another party's allegation of reasonable reliance on the misrepresentations." (internal quotation marks omitted)).

This claim boils down to Woori's allegations that Defendants concealed non-public information that caused the rating agencies to issue inaccurate ratings and Woori to invest in CDOs that Defendants knew to be nonstarters. And it is in this regard, like with the fraud claim, that the Complaint fails to allege with sufficient specificity the advantage that RBS had. There is simply nothing tying any of Woori's allegations of a conspiracy to manipulate the LIBOR rate or of the scathing rebukes of RBS's activities as discussed in third-party reports to this case. *Cf. M & T Bank Corp. v. LaSalle Bank Nat. Ass'n*, 852 F. Supp. 2d at 338 (finding allegations insufficient to suggest a special relationship where the defendants' knowledge of subprime mortgages was greater but not unique in a way as to render the transaction unfair); *N.J. Carpenters Health Fund*, 2011 WL 1338195, at *11 ("[M]ore is required . . . than 102 pages of 'the subprime market melted down and Defendants were market participants, so they must be liable for my losses in my risky investment.'" (internal quotation marks omitted)).

### IV. Unjust Enrichment

To state a claim for unjust enrichment, the plaintiff must allege that: (1) the defendant was enriched; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution. *Cruz v. McAneney*, 31 A.D.3d 54, 59, 816 N.Y.S. 486 (2d Dep't 2006). Woori has failed to state a claim for either fraud or negligent misrepresentation. The contractual relationship between them otherwise precludes a quasi-contractual claim. *Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005).

### CONCLUSION

The RBS defendants' motion to dismiss is GRANTED. Because I am presently of the mind that a second amended complaint would be an exercise in futility, I am denying leave to amend. Woori may write me a letter within ten days explaining how it would amend to correct the noted deficiencies if granted leave. Novastar ABS CDO I's motion to dismiss is DENIED as moot. The Clerk of Court is instructed to close the open motions and close the case.

SO ORDERED.

Date: 12/27/12
New York, New York

HAROLD BAER, JR.
**United States District Judge**

12